Your Honors, may I please the court? Let your opponent, Mr. Skragan, be seated there. Go ahead. You've got all the sayings. All right, Your Honors. This is another case where the IJ found that the petitioner failed to establish a nexus of persecution, and then she interestingly enough erroneously found that he was an economic refugee, because he had the gall to stay in India another two weeks after his last arrest in order to sell his restaurant. You have to back up just a little bit from the mic, because you've got to find that spot where it's loud enough, but you're not distorting. Okay. The IJ also continues to reside in India without a problem, and she stated that his demeanor was problematic, that it appeared he was reciting a story and showed no real emotion. However, she failed to cite any portion of the record in which he was allegedly without emotion or appeared to be reciting a story. She penalized him, in essence, for being consistent, for repeating what was in his declaration, which for most asylum applicants is one of the best ways to establish credibility, is by testifying in the same manner as the statements that are contained in the declaration. As far as the inconsistencies that the Board of Appeals rested their findings on, I think that the record shows that they're not truly inconsistencies. If you look at the record, the IJ continuously interrupts the Petitioner's Council during direct examination, starting from the record on 98 for the next ten or so pages, when discussing what had happened in the restaurant during that second incident, whether the three supposed militants ran out, whether they came out single file, whether they left the restaurant when the inspector entered or simply when they saw him outside. Even if the Petitioner did confuse his testimony, on the one hand say they walked slowly, on the other hand say they walked with a little bit of speed, this is irrelevant. It has nothing to do with his fear of persecution or the fact that the inspector then alleged that the Petitioner willingly helped militants simply because they came to his restaurant for a meal. He testified he was in the back preparing the food. So whether he even saw something or thought he might have confused what he saw does not go to the heart of the claim. Similarly, whether the cook was there and helped him prepare the meal or not does not go to the heart of the claim. The heart of the claim is why he was targeted, and here it was for an imputed political opinion. It didn't matter that he wasn't politically active, but the Indian police believed that he was a supporter and helper of militants without any investigation or justifiable reason. The fact that he wrapped up his affairs and tried to sell his restaurant in order to have sufficient funds to leave the country is not a basis to find him, to find that he failed to establish a nexus or that he was quote unquote an economic refugee as the IJ erroneously found. The Ninth Circuit has in many occasions stated that someone who stays even for a prolonged period of time, years after a last incident of persecution, is not necessarily found to have failed to establish a well-founded fear. The continued presence in a country for a minimum of two weeks like he did, like he stayed in India, should not refute his contention that he has a well-founded fear. Do you want to stand sometime for rebuttal? Yes, thank you. Very good. If it pleases the Court, my name is Don Scroggin, and I represent the United States Attorney General in this case. Can all the judges hear me clearly? Yes, thank you. I was just answering for myself, but I guess. In this case, the immigration judge and the Board of Appeals found material significant discrepancies and inconsistencies in Petitioner's testimony. It is significant here that there is no objective evidence in the record. Petitioner's claims depend solely on his testimony and on his asylum declaration. Would you address what was material about these inconsistencies? I'd be happy to, Your Honor. One of the first inconsistencies that was significant and material goes – is an inconsistency between the asylum declaration, which states that the people who set the Petitioner's restaurant on fire before setting the fire fired shots into the restaurant. Can you explain that? Yes, Your Honor, I will. I'd be happy to. The fire, he set on fire or fire, he seemed to be confused as to the meaning of the term. Did he not? No, he does not, Your Honor. This is a post hoc explanation of Petitioner and his counsel after the fact when asked about that identified inconsistency. The asylum declaration I'm not going to let him get away with explaining something which could well be a misunderstanding of English. I would address precisely your question, Your Honor, because the asylum declaration is one page and one page only. Do you know anything about these – this is an asylum declaration? Do you know how they're done? I know in this case, Your Honor, that this Petitioner was asked with assistance of counsel two years into his removal proceeding if everything in his asylum declaration was true and accurate, and if he wished to change anything under penalty of perjury. And he replied, no, he did not wish to change anything in this one-page asylum declaration. Yes, he was familiar with what was in it, and it was correct and true as written. It doesn't say they fired shots. It says that they fired at the restaurant and set it on fire. Correct, Your Honor. But if you look at the previous paragraph in that same asylum declaration, he understands clearly what the word fired means. It means fired a gun. So why does that go to the heart of his claim? I beg your pardon, Your Honor? Why does that go to the heart of his claim? Because basically the question is nobody is disputing that he's testifying, I think truthfully, that his restaurant is set on fire. Your argument is he ought to be denied relief because he says they fired on the restaurant. He says, no, I meant they set the restaurant on fire, and you think that's enough to support the adverse credibility determination. The question is why does that go to the heart of the claim? One reason, Your Honor, is that gunshots are something one is likely to remember. They're qualitatively different than other events in life. If a gunshot went off in this courtroom, I assure you all of us would remember that event. Clearly Petitioner here understands when he says fired, as in the previous paragraph of his one-page declaration, he means fired a gun. Fired in the air. Fired in the air, he says in the previous paragraph. And later he says fired at my restaurant and put it on fire. Now, when he comes back to correct that, because he's pressed about it, he testifies that, no, nobody fired any shots that night. They simply set the restaurant on fire. He's actually downgraded his story. I mean, he's sort of testifying against interest because it would be in his interest at that point to maintain that shots were fired because it would sort of, you know, ramp up the severity of the incident. But he's not doing that. He didn't write this. He didn't write this himself. He does testify to it. He does attest to it. But this is not his native tongue. And when he says men fired at my restaurant and put it on fire, I have to say, for my part, it doesn't take a lot of imagination to say, gee, when you say somebody fired at my restaurant and set it on fire, that we're not talking about both the act of firing guns at an unknown place and then committing an act of arson. That is a plausible conclusion, Your Honor, and one that could be supported by the evidence. It is not one of those. So you've had some good answers, but get back to the materiality. Suppose there was some discrepancy. So what? Well, Petitioner testified that he was not present when his restaurant was set on fire. How could he have known? And nor does he testify that the person who told him his restaurant was set on fire, that any shots were fired. I'm only pointing out that he, that there is an inconsistency here between his testimony and his declaration. Well, no. On an issue. Does the inconsistency undermine the claim that the restaurant was set on fire? It goes to the fact that this Petitioner may not have experienced these events. No, no. I'm asking you, does it undermine the claim that the restaurant was set on fire? It undermines the claim that Petitioner is presenting a credible and consistent story that is sufficient to meet his burden of proof in this case. Well, no, no. You're going off and saying, well, there was an inconsistency. Suppose there is. How does it show that the story of the fire was? Well, I don't think you can answer that, but how about the pace at which he moved? That's a strange one. I will acknowledge, Your Honor, that that is perhaps a weak inconsistency. Let me move on to one that I would point out as being stronger, and that is the presence of the cook or not the cook. How many? Four, five, one. Did that make a big difference? Probably not a big difference, Your Honor. I will concede that. But I would like to point to another inconsistency that I think is more significant, and that is when he the three boys, the term militant is used throughout this case, but these are boys, rowdy boys with guns. That's the only evidence in the record. And while Petitioner refers to them as militants, and indeed the IJ and the Board do, they don't wear uniforms. They're boys with guns engaged in illegal activities. So you're making an argument that hasn't been made by the IJ, the BIA, or anyone else? I'm simply pointing to that I'm saying that that evidence in the record, in addition, is relevant perhaps to the Board's conclusions. With respect to the cook's presence, it only goes to Petitioner's credibility as to whether or not these events actually occurred or not. He states in his testimony, without any reservation, that he went and prepared dinner for these boys who came in because the cook and all the waiters had gone home. That's in the record. He then states, well, no, the cook was actually there. This is an inconsistency that relates to an event that is at the heart of his claim. The event was the boys coming to the restaurant and the inspector entering the restaurant. As to how they left one by one or left rapidly or quickly, I'll concede that's not significant. But he goes back and forth on an event that relates to a memorable occasion. He was there. Something seared in his memory because the inspector came in and, according to his story, began beating him right there in his restaurant. It also goes to the burden of proof. If there were a cook present, might a cook remember that his boss was knocked down and beaten in front of his eyes in his own restaurant? And so really, I find ... Let me tell you something about the testimony you just went over. That was the government's mischaracterization of what he had actually testified. Again, the government says now you just testified. You said everybody has gone home and you did the cooking. Do you remember that? And that isn't what he said. On page 98, Your Honor, he clearly says there is no cook present, unambiguously. On page 111, he says the cook was there. And you're quite correct. On page 133, which I believe is where you're reading, he says that the cook and the waitress had gone home. I said all along I gave testimony the cook was there. You're reading from page 111, Your Honor? 135. All right. But on page 133, he says clearly the cook and the waitress had gone home. Are you talking about the excerpt to record or the transcript? The transcript. I'm sorry. I'm talking about the record itself, the record page number 133, not the transcript page number, but the record page number of 133. So those are the references you've been giving earlier? Yes. I'm referring only to the record page numbers, whereas the board usually refers to the transcript numbers because the record's not prepared at the time they do it. Okay. We're on the same page then. It seems to me you recast these tiny inconsistencies to say, well, they were about events. Well, of course they're about events. But even if the strained construction of what he said is indulgent, they're tiny discrepancies. And it's just you're not facing the law or the circuit that says immaterial discrepancies can't be considered. I would suggest, I would respectfully disagree, Your Honor, and suggest that the immigration judge here reasonably reached a conclusion that there was reasonable doubt as to whether or not these events happened. These are two occasions that would be seared in the memory of Petitioner, and he can't get his story straight as to where he was and what he was doing and what happened. Those are relevant to an immigration judge's conclusion that this person is not reliable. Well, you've done a better job for the government than often is done. Is this your first case? No, it's not my first case, Your Honor. First immigration case? No, it's not my first immigration case. Where were you stationed normally? I beg your pardon, Your Honor? Where was your normal base? In Washington, D.C. I'm a trial attorney with the Office of Immigration Litigation. So you come out and do it well? The government is you're a credit to the government. But the government sometimes it's a very tough case to defend. That's my job, Your Honor. Thank you, counsel. Great bottle. Your Honors, I just want to address this issue about the fire at the restaurant. Government counsel had pointed out that if someone hears a gunshot, they remember it clearly, and that's not a fact that they would soon forget. However, the record indicates and the petitioner testified that he wasn't present. He had closed his restaurant two hours early for a holiday, a religious holiday on that day, and he only learned of the fire from his neighbors. So there's no reason to think that he would have seen or heard a gunshot and that would have left an impression on him, and then he somehow forgot to testify about it. Again, I think that's an immaterial inconsistency. As far as whether the cook was there or not, he didn't submit an affidavit from the cook, and had he submitted an affidavit but then stated the cook wasn't there, then clearly we would have some sort of inconsistency or vice versa. So clearly the fact that he made a small error, if he even made one, whether the cook was there or not, does not negate from the fact that the police falsely and erroneously targeted him, even though he had no relation with the boys that were at his restaurant. Thank you. Any further questions? Thank you for your argument. The case is heard and will be submitted. We'll proceed to arguments in Fraser v. Temple Pius Union High School.
judges: Noonan, Thomas, Bybee